PILLSBURY WINTHROP SHAW PITTMAN LLP
ROBERT L. WALLAN (SBN 126480)
robert.wallan@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: 213.488.7100
Facsimile: 213.629.1033

Attorneys for Plaintiff THE BOARD OF TRUSTEES OF
LELAND STANFORD JUNIOR UNIVERSITY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| THE BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED EDUCATORS INSURANCE, A RECIPROCAL INSURANCE GROUP,<br><br>Defendant. | Case No. 5:19-CV-621<br><br>**COMPLAINT** |
|---|---|

Plaintiff The Board of Trustees of the Leland Stanford Junior University ("Stanford"), by and through counsel, for its Complaint against Defendant United Educators Insurance, A Reciprocal Insurance Group ("UE"), states as follows:

**NATURE OF CASE**

**1.** This lawsuit arises from a denied claim under Stanford's Educator's Legal Liability Insurance policy purchased from UE. As explained below, UE failed to timely acknowledge the underlying claim, denied coverage, and then later agreed that some coverage was triggered. UE unilaterally and without justification determined that only a minute portion of the underlying claim would be covered. After announcing its de minimus allocation, UE refused to make any payments. Stanford settled the underlying claim, but was forced to fund the settlement and all of the defense fees because UE refused to honor its policy and good faith obligations.

-1-

**THE PARTIES**

**2.** Stanford is a trust with corporate powers under the laws of the State of California, and located in Palo Alto, California.

**3.** UE is a risk retention group as defined in the Federal Liability Risk Retention Act and a captive insurance company formed as a reciprocal insurer incorporated under Vermont law with its principal place of business in Maryland.

**VENUE AND JURISDICTION**

**4.** This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because diversity of citizenship exists between Stanford and UE, and because the amount in controversy exceeds $75,000.

**5.** Venue is proper because a substantial part of the events giving rise to the claims asserted herein arose from actions which occurred in this District.

**THE POLICY**

**6.** In exchange for a substantial premium, UE sold Stanford an Educators Legal Liability insurance policy with the effective dates of the policy being September 1, 2015 to September 1, 2016.

**7.** The insuring clause of the policy provides that UE "will pay on behalf of [Stanford] that amount of **Loss** that exceeds the **Self-Insured Retention** up to the **Limit of Liability** as a result of a **Wrongful Act** anywhere for which a **Claim** is first made against the **Insured** during the **Policy Period** and reported to us as required by this **Policy**."

**8.** **Loss** is defined in the policy to mean **Damages** and **Defense Costs**. **Damages** is defined to include settlements to which UE consents.

**9.** The policy defines **Wrongful Act** to mean "any actual or alleged error, omission, act, misstatement, neglect or breach of duty in the discharge of duties to or on behalf of [Stanford.]"

**10.** The policy contains certain exclusions, none of which apply to this claim.

## THE CLAIM

**11.** During the policy period, Stanford received a claim that fell within the insuring clause of the Policy. Stanford promptly reported the claim in full compliance with the policy's requirements.

**12.** The underlying claim against Stanford alleged Wrongful Acts as defined in the Policy, and sought monetary damages substantially in excess of the self-insured retention. The claimants were mainly individuals and entities with no contractual or other relations with Stanford. One claimant had a contract with Stanford, but that contract expressly barred recovery of damages for the claims asserted.

**13.** The underlying claim was asserted via a series of written and oral communications. Those communications took a "scattershot" approach, raising many theories, some inconsistent, others expressly barred as noted above. Those claims were explored via communications including mediation statements, letters, and in-person meetings. The principal claim involved an alleged failure by Stanford to supervise an employee, who unbeknownst to Stanford, was moonlighting and had a separate contractual relationship with the claimants.

**14.** Upon receipt of the notice of claim from Stanford, UE initially denied that the notice constituted a claim. Instead, UE described the notice as simply a notice of circumstances that might lead to a claim. Later, UE acknowledged that a claim within the meaning of the policy had been made.

**15.** Instead of accepting coverage, UE issued a "reservation of rights" letter in which it asserted numerous coverage exclusions that either did not apply on their face, or could not apply absent a final adjudication adverse to Stanford, something that never happened.

**16.** UE asserted that the Policy contained an allocation provision that should apply so that only a small fraction of the claim would potentially be covered. The relevant Policy provision states as follows: "The **Insureds** and **we** agree to use our best efforts in good faith to reach a fair and equitable allocation of **Loss** between covered and non-covered elements of any **Claim**." UE refused

to pay *any* percentage toward the settlement of the matter or for reimbursement of defense costs. Instead of using any efforts to reach agreement, UE simply refused all payment, offering to pay twenty five percent of the loss if Stanford agreed it would receive no more. UE offered no credible rationale for its position.

**17.**     The Policy contains a dispute resolution provision requiring that all disputes be submitted to a mutually acceptable mediator prior to the initiation of litigation. The Policy requires in relevant part that "[t]he parties shall: (i) mediate in good faith; (ii) exchange all documents which each believes to be relevant and material to the issue(s) in dispute; (iii) exchange written position papers stating their position on the dispute(s) and outlining the subject matter and substance of the anticipated testimony of persons having personal knowledge of the facts underlying the dispute(s). . . ."

**18.**     Instead of mediating in good faith, UE repeatedly requested information that it had already been provided, and failed to identify a single witness to support its so-called allocation proposal. In contrast, Stanford made meaningful proposals, and identified witnesses and documents strongly supporting its position that it is entitled to the benefit of the insurance it paid for. Stanford has fully complied with all of its obligations under the policy, including the pre-litigation mediation provision.

**19.**     UE never offered any credible rationale for its so-called allocation, and in so doing disregarded Stanford's rights to the insurance it paid for, forcing Stanford to bring this lawsuit in order to obtain the contractual benefits of the insurance it purchased.

**20.**     Stanford defended itself against the underlying claim at great expense, and reached a confidential settlement with the claimants. Stanford kept UE fully apprised of all developments and sought permission to settle. UE consented to the settlement, agreeing not to raise lack of consent as a defense to coverage, but refused to pay any policy benefits.

### FIRST CAUSE OF ACTION
### (Breach of Contract )

**21.**     Stanford incorporates the foregoing paragraphs as if fully set forth herein.

22. As set forth above, Stanford and UE entered into a valid, binding and enforceable contract for insurance covering the losses alleged herein.

23. The Policy obligates UE to investigate and to reimburse Stanford for defense and investigation costs paid or incurred, and to pay for settlements of claims covered under the Policy.

24. Despite acknowledging that at least some of the underlying claim was covered, UE elected to hold all of its coverage hostage unless Stanford would agree to the minute allocation that UE sought.

25. Despite having timely notice and an ample opportunity to reimburse Stanford for its defense fees and costs, UE breached its policy obligations by failing and refusing to reimburse Stanford for any of its defense fees and costs.

26. It is UE's duty under the Policy to pay for Stanford's defense costs, but UE has refused to do so.

27. As with defense costs, UE refused to make any contribution to the underlying settlement unless Stanford agreed to waive all claims beyond the *de minimus* allocation demanded by UE.

28. UE has breached the express and implied terms of the Policy by failing to pay Stanford for Stanford's losses and damages suffered.

29. As a result of UE's breaches, Stanford has suffered damages, including the amount of the underlying settlement, the defense fees and costs incurred, together with pre-judgment interest at the highest rate allowed by law.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

30. Stanford incorporates the foregoing paragraphs as if fully set forth herein.

31. Under California law, UE was and is obligated to act in good faith toward Stanford in carrying out its obligations under its insurance policies. This obligation arises both in tort and in contract.

**32.** As UE has acknowledged, the underlying claim included allegations falling within the insuring clause of the policy, and not excluded from coverage. Although Stanford denied liability in the underlying claim, it paid for and is entitled to reimbursement for its defense from UE.

**33.** UE has failed and refused to pay any amount to Stanford, contrary to its obligations under the Policy. In staking out its position regarding reimbursement of defense obligations, UE claimed it did not have invoices when it actually did, and then refused to offer any analysis of the defense effort needed for the admittedly covered allegations. UE elected to focus on one set of allegations in the underlying claim that it posited were not covered, even though UE had compelling information that the arguably excluded claims were entirely barred as against Stanford and thus provided no material source of exposure.

**34.** In response to Stanford's tender of the underlying claim: (a) UE failed to maintain and utilize reasonable standards for the prompt investigation and processing of claims as reflected in its untimely and facially incorrect responses to Stanford's tender; (b) UE failed to provide a prompt or reasonable explanation of its coverage decisions; (c) UE failed to pay defense fees and costs based upon the false grounds it adopted in its coverage letters and denied coverage for indemnity; (d) failed to comply with the policy obligation to take a reasonable position with respect to allocation; and (e) failed to comply with the dispute resolution provisions of the policy by failing to identify a single witness to support its position.

**35.** In breach of its duty to Stanford, UE, unreasonably and without proper cause, delayed and denied benefits owed to Stanford by engaging in the following conduct: (1) refusing to timely and fully pay its insured for the full cost of covered damage; (2) mispresenting pertinent facts and policy provisions related to coverage at issue; (3) failing to conduct a fair, timely, and thorough investigation of Stanford's claim; (4) refusing to reconsider its coverage position, even when facts that undermined the basis of its denial became evident; and (5) paying not a single penny of defense costs reimbursement owed to Stanford, thereby forcing Stanford to institute litigation, and incur the fees and costs associated therewith, simply to recover what was properly owed.

**36.** UE's wrongful conduct was frivolous, false, malicious, oppressive, and fraudulent and calculated to deprive Stanford of the benefits to which Stanford is entitled.

**37.** UE should have known that its conduct was unreasonable and/or UE recklessly disregarded the fact that its conduct was unreasonable and without proper cause.

**38.** By reason of the actions alleged herein, UE breached the implied covenant of good faith and fair dealing inherent in its Policy, forcing Stanford to become involved in litigation with it. UE's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract of insurance.

**39.** Stanford is informed that UE's bad faith and breach of the covenant of good faith and fair dealing is part of a practice of denying defense reimbursement to policyholders. UE's conduct has caused Stanford to suffer and continue to suffer damages, attorneys' fees and costs incurred in bringing this lawsuit, together with pre-judgment interest at the highest rate allowed by law.

**40.** Stanford is entitled to judgment in its favor against UE, for compensatory damages for its losses, including pre-judgment interest, costs, reasonable attorneys' fees in accordance with the applicable law, and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stanford demands judgment as follows:

1. On Stanford's First Cause of Action, for judgment in its favor and against Defendant UE for all damages as proved at trial;

2. On Stanford's Second Cause of Action, for damages according to proof, for attorneys' fees and costs incurred by Stanford in seeking to obtain the benefits of the insurance coverage owed to it;

3. On Stanford's Second Cause of Action, for punitive damages in an amount sufficient to be deemed "material" for financial reporting purposes and to deter UE from ever again engaging in the conduct described in this Complaint;

    4.    Costs, expert witness fees, and attorneys' fees incurred in prosecuting Stanford's claims against UE;

    5.    Pre- and post-judgment interest; and

    6.    For such other and further relief as this Court may deem just, equitable, and proper.

## JURY DEMAND

Stanford hereby demands a jury as to all issues herein so triable.

Dated: February 5, 2019

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:   */s/ Robert L. Wallan*
        Robert L. Wallan

Attorneys for Plaintiff THE BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY

-8-

COMPLAINT
Case No. 5:19-CV-621

4817-3139-9788.v1